May it please the Court. My name is Spencer Freeman. I represent AMA Multimedia in this appeal. I would like to reserve five minutes for my rebuttal, if I may. All right. Thank you. The key to understanding the issues in this case is the true and vast separation between the operations of the website porn.com and the language of the content partnership agreement. GIM owns many websites and displays only legal AMA-provided content on those websites pursuant to the content partnership agreement in compliance with the content partnership agreement, completely separate from porn.com. And AMA has no issues with GIM or the way GIM operates the content partnership agreement. Now, the website is a separate asset housed in different businesses. It is a free video site owned and operated by the appellees in this case. It just happens to utilize Traffic Force as the entity or business that controls the ads on the website. If the website were to change its ad broker or change the ad company, it would function exactly the same as it does today. Traffic Force is not necessary. Traffic Force is not, they don't rely on Traffic Force to operate the website. The owners and operators of porn.com illegally distributed, illegally obtained AMA content. The contractual relationship outlined in the content partnership agreement and the operation of porn.com are in direct contradiction with each other. The license ensures three conditions to be met. One, that AMA provides the content to GIM. Two, that GIM does the streaming on websites where Traffic Force is utilized. And three, that GIM does the streaming on websites that it builds and it maintains. Porn.com only meets one of these criteria, the utilization of Traffic Force. I think it would be helpful to do the same analysis that this court did in Britain versus co-op banking. Look at whether or not there's assignment, which the trial court in this case found. Look to see if there is a third-party beneficiary, and if there's not, move over and look to see whether or not the appellees in this case are the type of parties that were anticipated to receive protections or rights or duties underneath the content partnership agreement. The assignment issue is the easiest issue in this case. When it comes to assignments of rights, the assignee has to step in the shoes of the assignor. So here, what the trial court found was that the assignor, GIM, assigned rights to CyberWeb, Sagan, NetMedia, all three simultaneously. That is an impossible assignment underneath the law. Intellectual property rights are not a bundle of sticks that an assignor can just hand out based off of a license. It's in singular unit. So the trial court's going to have non-exclusive licenses, so you can have multiple licenses and assignments. I don't see any legal barrier to that. Maybe you can explain. But in this case, it's a non-transferable license. And that's really key. There is an assignment clause, but there's a non-transferable license. The only way to reconcile those two things is for the assignor to step into the shoes of the assignee. So they then become the licensee. There's only one pair of shoes here. The second problem is that GIM retained the rights. So GIM didn't really assign rights because GIM retained rights, and that was clear. That's impossible under the law as well. Why? Again, because it's a singular right. When you look at the restatement of contracts that we quoted, Section 317, it says exactly this, that the assignee steps into the shoes of the assignor, and the assignor relinquishes those rights. Well, it depends on what's assigned. I mean so I mean. True. But this is an intellectual property right. Right. I understand that. But what exactly was assigned here, if anything? Well, that's the next question. Well, that's my question, because to me it doesn't look like anything was assigned. So I see very little evidence of an assignment, but I really question, there's some vague language in a declaration that said there was an assignment of rights. What rights were assigned? Right. And I think that's a fantastic point. When you look at this EPA, there's three type of major rights. One is to distribute or display videos and images. The other one is to use AMA's trademark. And then the other one is to have the right to receive compensation, money. And those declarations do not say what rights were assigned. Well, here's the question I had. When this was in the trial court and all this could have been worked out, did you ask for additional discovery on this point? So by the time we were. And I know you think that you got blindsided by the timing. But at that point, if you thought there was a factual issue or otherwise, did you ask for additional discovery? Well, no, but we took advantage of the discovery that was granted to us, and we actually asked Chris Richardson from CyberWeb during depositions about assignment, and he couldn't recall any assignments. But that doesn't mean it wasn't assigned. I mean, in other words, he's the assignee, and you don't have to have knowledge of the assignee. So there's that one piece of evidence. But you have the declaration, which on its face says that they're assigned. So my question, I guess I go back to, is did you ask for additional discovery? We did not ask for additional discovery on that issue, no. But I would also point out that establishing the burden or the assignment is not our burden. It's the other side's burden. No, but I understand. But if they put in the evidence, and you don't do anything in contrast to it, then it's uncontroverted evidence, isn't it? But it's not, and here's why. When you look at the claims filed in Barbados, what the parties there do explicitly in those claims is say that these are GIM's rights. GIM is the only one that filed a breach of contract claim. The other, the appellees here, which I guess would be analogous to the plaintiffs there in Barbados, the rest of them, they're asking for a declaration that they can rely on GIM's rights. Well, that means it's not assigned, because if it's assigned, it's my right. I understand. But that doesn't solve the question before this district court was what to do about the Foreign Nonconvenience Clause and whether it, in fact, should be in Barbados. So the Barbados lawsuit, I don't think, figures in to the determination here. It does to the extent of their own representations about whether or not there's an assignment. Now, mind you, this allegation of assignment, it didn't come up until several motions in and until we questioned in our own briefing that they had an established assignment. Then there's this declaration with this assignment that has no date, no from whom to whom, and no. But we don't actually have a written assignment. No. And we don't actually have evidence of an oral assignment. I'm not sure. I don't know what the contract says about whether or not it can be orally assigned. It doesn't say anything. It doesn't address that particular issue. So what would happen? What would happen if this went back to the district court? Well, we're asking you to find that the assignment did not occur, that the finding of assignment was abuse of discretion, that there was no assignment. So if we go back and the trial court's determination of the application of the form selection clause was based off of a finding of assignment. Right. So this Court, if you find that there's no assignment, you really have two options at that point. You can send it back down for the trial court to hear further argument and evidence on the issues of implied licenses, third-party beneficiaries, and then the next step under Britain, which this Court looks at, is whether or not the transaction, the parties are meant to be protected by the content partnership agreement. You could send us back down for those determinations, or on this record you can make those determinations. And I think on this record there's no implied license. There could be no implied license. The law on third-party beneficiaries is clear. If both parties don't intend to benefit a third party, there is no third-party beneficiary. It's clear when you look at this content partnership agreement that GIM is supposed to be doing all the work of running the websites. Section 5 absolutely delineates that. So there's no anticipation that there's other entities involved in the operation of anything to do with the content partnership agreement. So then that leaves us with the issue of whether or not the appellees in this case are of the type that are meant to be protected under the content partnership agreement. And I would say that there's no evidence at all that they would be. Now, what they try to do is they try to conflate this course of conduct about videos that were discovered on porn.com that AMA didn't submit that they're now trying to attach over to the content partnership agreement. But those actions never took place. When you look at the Skype chat logs and you look at AMA absolutely saying piracy needs to come down. We want to be paid for the revenue you generated based off that piracy up to the point you take it down, but it needs to come down. It's unequivocal in those Skype chat logs that this course of conduct represented by the appellees just simply did not happen. And I am now into the time I'd like to reserve for my rebuttal. Thank you. Van Loon Good morning, Your Honors. Erica Van Loon on behalf of Respondents. The lower court did not abuse its discretion in dismissing the suit on the basis of forum nonconvenience. Here, AMA entered into an agreement, the CPA, which contains a forum selection clause at section 10.5 that states any legal action arising out of or relating to this agreement must be instituted in a court located. And entered into that agreement with GIM Corporation? Correct, Your Honor. And why is your client entitled to the benefit of that forum selection clause? Yes, Your Honor. There's a large body of law in the Ninth Circuit that says non-signatories to a contract can invoke the forum selection clause. In particular, Holland America and Minetti-Ferro stand for the proposition that non-signatories can invoke a forum selection clause. In particular, in Minetti-Ferro, when the parties are closely related to the signatory to the agreement, that is a basis for which those non-parties can invoke the forum selection clause. Here, there's no question that appellees are closely related to GIM. In fact, AMA in the lower court even argued that they were so close in opposition to motions to dismiss that they were in fact alter egos of each other. Here, the contract, the CPA, expressly contemplated that GIM would work through its agents in 6.2 in order to administer the site and to post AMA's content to the site. AMA from the get-go was aware that GIM was working with its affiliates in posting its content to the site. AMA had e-mail. Now, Sagan is the owner of porn.com, is that right? Sagan and CyberWeb are the owners of the site, Your Honor. And Sagan is owned by Kunar? Yes. All of the sites All of them are owned? I'm sorry. All of the parties eventually are owned by a family trust owned by appellee David Kunar. That's correct, Your Honor. So two issues that I think are troublesome, one is the non-transferable license and how you think that fits in, and then the second is, is there an assignment and is the declaration sufficient evidence? If you would address those. Yes, Your Honor. I would point the Court to section 10.3 of the agreement, which states that the licensee may assign the agreement without consent to an affiliate, parent, or subsidiary. And I would point out that it actually says in 10.3, permitted assigns, so it contemplates plural assigns to the agreement. Here, as Your Honor stated earlier, the ASINOR put in evidence that there had been an oral assignment between GIM and appellees. And under Britton v. Co-op, all that is needed to establish evidence of a sufficient assignment is evidence that the ASINOR intended to make an assignment. You know, one thing that we don't have that you would normally see in an assignment  Yes. So where do we get that here? Again, it was Yeah, and which rights, and an assignment is a contract like any other contract. It has to have some kind of what you're assigning and what you're getting in consideration for, and that's what an assignment is. You're just not sending your rights without getting anything back. It is a contract. Right. So where is it? Where's the assignment? Where's the evidence of an assignment? It's in the conduct of the parties, Your Honor. When was the assignment made? The assignment was made from the get-go, Your Honor. From the get-go. GIM Get-go. What does get-go mean? What was the date of the get-go? GIM doesn't own any websites. Right. GIM only owns a software program called Traffic Force that provides an ad revenue share program that can be used on various websites. So when AMA entered into the license agreement with GIM It was like magic? It was with everybody and everybody who had the benefit of an quote-unquote assignment? It's not everybody, but you know I thought you said it was everybody because everybody was affiliated. Well, not everybody is affiliated, but these particular parties are closely related to GIM in this case. They're still separate entities, however. So there still needs to be some kind of legal manifestation or rearrangement of rights if you're going to actually have an assignment. Yes, Your Honor. I mean, but also remember that we argued multiple grounds for You actually changed your position multiple times and finally landed at the end of this series of positions you took on the CUNAR declaration that there was an assignment of rights without any detail about this whatsoever. We put in evidence that there was an assignment. But it's a declaration by CUNAR. What other evidence did you put in? Of the assignment, of the course of performance evidence. In fact, we put in Skype chat logs that we had. Evidence. Oh, I saw that. Okay. But that was kind of misleading, wasn't it? Well. When you didn't have them omitting certain sections and it was read in full, it kind of told a different story. Well, what it showed is that Appleese at all times understood that any content of AMAs appearing on the site was licensed under the CPA. That was their intent. I don't think they agreed to that. I don't think they characterized it that way. But my clients understood it that way. And it's important to remember that AMA did get paid for the time that its content appeared on the site. What this comes down to for me is that if this is truly a legitimate assignment, there would be an assignment in the record. There would be more detailed evidence of an assignment in the record. And it's your burden of proof to demonstrate the assignment. And it's quite possibly a basis for the district court to have actually abused its discretion in this case, because I don't think it adequately applied the burden of proof. Plus, it was — yeah, I think that could very well be it, because you need to show the evidence of an assignment and you brought forward one self-serving sort of partial kind of description of this conclusory description stating there was an assignment. But there's no detail that would support that at all. It's important to remember that the Ninth Circuit can affirm on any grounds supported by the record here. Well, I know that. That's something I really know after 22 years on the Ninth Circuit. Right. But we argued — we also argued that we were agents of GIM, and that's expressly contemplated by the CPA that GIM will work with its agents at Section 6.2. The court also correctly found that Applees were corporate affiliates and were closely related to the infringing conduct. There's — under Minetti-Ferro, there is no way to determine whether or not an infringement has occurred here without interpreting the CPA. And Minetti-Ferro instructs if you're interpreting the underlying agreement, then the form selection clause should be applied. Well, what you're saying is that there's sufficient here to invoke the form selection clause, and then whichever — if it's the U.S. court, it's going to have to go through everything. If it's the Barbados court, it then needs to interpret the agreement and figure out whether, as counsel has indicated, only certain items were actually intended to be licensed and not just everything that's on the website. That's right, Your Honor. And it's also important to remember Section 3.9 of the agreement expressly states that it's not only content provided by AMA to GIM, but content originating from a website is also treated as licensed content under the agreement. But isn't — isn't that a question of liability under copyright law per the agreement as opposed to whether Barbados is the correct form? Again, yeah, I think we're already getting past where Minetti-Ferro said that we should stop because we are interpreting the terms of the agreement. But in this case, the Court found not just on assignment, but also found that they were closely related parties and that the conduct at issue was very closely related to the CPA. So what happens if this goes to Barbados, then the agreement gets interpreted and you lose, then is the copyright claim litigated there or under U.S. law because it's a U.S. copyright claim or does it come back? I'm not a Barbadian attorney, but Barbados is a signatory to the Berne Convention, and this is a U.S. copyright. My understanding is that Barbados would apply U.S. copyright law in determining infringement in Barbados. That's my understanding. So if this assignment is deemed to be not sufficient, I guess, then your argument is that these various entities that we have here are sufficiently related and derivative of GIM to have standing to invoke the clause, is that? That's right, Your Honor, that they're closely related, that they're agents of GIM as expressed by 6.2, that they're implied licensees, that they're third-party beneficiaries, for all of those reasons. Let me ask you another question about the Forum Selection Clause. In your view, you know, and again, for your brief, what authorities support the argument that Federal contract law should apply where a contract contains a Forum Selection Clause explicitly selecting the law of a foreign country? Yes. I believe that there's a lot of Ninth Circuit laws that state that a Federal court should use U.S. law to figure out whether or not a Forum Selection Clause is enforceable. That is, again, in Menetti-Ferro, and we cited some other cases on that as well. Next trade, v. Hyung Sung, Federal law applies in the analysis of the effect and scope of a Forum Selection Clause. And it's important to remember that Atlantic Marine instructs that a Forum Selection Clause should always be enforced absent extraordinary circumstances. And there really aren't any extraordinary circumstances here where CyberWeb is a Barbadian company and GIM, the signatory to the agreement, is a Barbadian company. And so I have a question, a further question about your reliance on Menetti-Ferro. You seem to be relying on it to say that the Forum Selection Clause should encompass all the affiliates because they're closely related as entities. But the way I read Menetti-Ferro, it was talking about different types of claims that were related, not entities. No. Menetti-Ferro brought in non-signatories to the agreement, as did Holland America. Okay. So, but the big question was whether the tort claims fell within the fulfillment, right? Right. Okay. So how does that relate here? We believe, again, that Menetti-Ferro and other cases stand for the proposition that non-contract claims also get swept into the Forum Selection Clause. Non-contract? Yes. So by non-parties? I mean a non-breach-of-contract claim versus here a copyright infringement claim. And actually, there's a section in the CPA. I'm still on Menetti-Ferro. Yes, go ahead. Can you point me to Menetti-Ferro, language of Menetti-Ferro, which supports your position? Your Honor, which part of Menetti-Ferro did you want me to point you to? The part that supports your position. Yes. The precise language, because I'm not hearing it. Sure. 858 F2D at 514, Your Honor. It says a range of transactions. I'm sorry. What did you say? 514? I apologize. 514? At 514. We'll get there. Okay. What part? Okay. A range of transaction participants, parties, and non-parties should benefit from and be subject to a forum selection clause. Yeah, I don't see that. It says, we first note forum selection clauses can be equally applicable whether it applies. Depends on whether or not we must determine if the claims require interpretation. Your Honor, this seems to me to be just relating only to the question of whether the claims are sufficiently related, not non-parties at all. Okay. Well, also Holland America adopted Menetti-Ferro's position that a range of party participants can invoke a forum selection clause. I don't even see the language about a range. Hang on one second. It seems at the point of Menetti-Ferro, ultimately they said Federal law prevails in interpreting. I guess the question here was would it matter at all because we also have a clause that says if no one introduced some contrary interpretation under foreign law, then U.S. law applies. So it doesn't put it right back in the same place as Federal law, either way? I believe it does, Your Honor. Menetti-Ferro, Nextrade, Jones, Doe 1 v. AOL, they all state that Federal law should be used to construe whether or not a forum selection clause is enforceable. Thank you. There's one point I want to clear up, a factual point, and that is the statement that GIM owns no websites. That's not true. In the record on page, the excerpts of record on page 1257, Mr. Kunar was asked, what does GIM Corp do as a business? Answer, GIM Corp owns a variety of websites and programs. Then again on page 1259, Mr. Kunar is asked, would you agree with me that GIM Corp is a company that's owned websites and affiliates for over 15 years? Answer, yes. So if any of this Court's analysis is based off the fact that GIM doesn't own websites, that's absolutely not true. I don't know how that got created. I'm not sure how it would matter. Well, so it matters in looking at the content partnership agreement and whether there's any anticipated third party involvement in the operations of it. The appellees want to say because GIM owns no websites, we've got to involve third parties to function with the CPA. But it's not true. GIM owns websites. GIM does not own porn.com. That's true. Okay. That part's true, yes. Thank you. In looking at Venetti-Ferro, the clause that's being referred to that says a range of transaction participants is footnote 5 in the ruling. And it cites to Coastal Steel, which is a Third Circuit case. And in Coastal Steel, the plaintiff contracted with an English company to build a steel factory. That English company then subcontracted with another English company to build a heat blast. That heat blast caused damage to the plaintiff's steel factory. They sued the subcontractor. The court said that the forum selection clause between the contractor and the subcontractor, which dictated England, applied because everybody knew that the steel company was going to be a third party beneficiary to the subcontract to build the heat blast. So that's what I was trying to understand is what was the rationale. Why would you say so it would have to be fit into some other logical legal area. It could be assignment or it could be third party beneficiary or it could be another kind of contractual in nature relationship. Right. I think that there's two different questions that are asked. One is, is this a party? Is this a transactional party that should get protections of the CPA? And then the next question is, are the claims related? And that's where the closely related language comes in that everybody is kind of relying on. That closely related has nothing to do with the parties themselves. Right? The parties themselves could be. That is the arising out of or closely related as to what's covered. Correct. The claims that are covered. That's right. But the footnote 5 says, a range of transaction participants, parties and non-parties should benefit from and be subject to forum selection clauses. And they go on to say, we agree with the district court that the alleged conduct of non-parties is so closely related to the contractual relationship. So that's a kind of a different closely related statement in footnote 5 and Minetti as opposed to the contractual language of arises from or is closely related to in the contract. No. Actually, I think that the last portion of that footnote does go to the closely related issue of the forum selection clause. I think that's exactly what it goes to. Well, it does, but it goes to the relationship of the parties vis-a-vis the contract. Right? It could. But when you go back and you look at Coastal, it's a third-party beneficiary case, and then they analyze it from there. Could you, the district court in its order says, AMA has accepted the benefits of the pay-per-view.com account and cannot now disaffirm the contract simply to avoid the forum selection clause. So. Respond to that. The statement that AMA, the only way that that would be true is if AMA had been paid on pirated content that was assigned to the CPA account. That never happened. The only way that that's true. Right? Because if AMA did receive benefits from the promotional content that it provided to GIM through the pay-per-view account, and which was displayed not only, by the way, on porn.com, but a myriad of other GIM websites, this promotional material was provided to the CPA. Yes, they received benefits through that. But the owners and operators of porn.com went out and stole full-length videos, full-length movies, put those onto porn.com, and now they want to take advantage of the content partnership agreement and say two things. One, is we belong in Barbados. And two, by the way, provide by means we can go get it anywhere. I mean, it's really a disingenuous. But that gets into the merits of the claim. It does. It gets into the merits of it. That's true. Okay. But I do think that the Court, the statement that Minetti-Ferro doesn't allow you to analyze the forum selection clause or the content partnership agreement, that's wrong. When you're first making a decision as to whether or not a party is subject to that agreement, you get to look and analyze that agreement. You don't get to, the law isn't that, oh, because somebody claims that they are. If you're going to analyze the agreement to determine whether or not, you've got to go back to the forum. That's not what the law says. What the law says is whether or not the forum selection clause, excuse me, whether or not there's liability and you've got to make that determination, that's got to go to the forum. And I see that I'm past my time. You are. Thank you very much. Thank you. Thank all counsel for the argument and the briefing. Again, a very interesting case for us. AMA v. Sagan Limited is submitted and we're adjourned for the morning. Thank you.
judges: McKeown, Wardlaw, Katzmann